UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THEODORE D. McLEARN,<br><br>        Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security<br>Administration,<br><br>        Defendant. | No. EDCV 17-244 AGR<br><br>**MEMORANDUM OPINION AND ORDER** |

      Plaintiff Theodore D. McLearn filed this action on February 10, 2017. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 10, 14.) On February 9, 2018, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

      Having reviewed the entire file, the court affirms in part and reverses in part the decision of the Commissioner.

# I.
# PROCEDURAL BACKGROUND

McLearn filed an application for disability insurance benefits on September 23, 2013, and an application for supplemental security insurance benefits on August 23, 2013. In both applications, McLearn alleged an onset date of July 24, 2012. Administrative Record ("AR") 20. The applications were denied initially and upon reconsideration. AR 20, 97-98, 125-26. McLearn requested a hearing before an Administrative Law Judge ("ALJ"). On August 10, 2015, the ALJ conducted a hearing at which McLearn and a vocational expert testified. AR 43-72. On August 27, 2015, the ALJ issued a partially favorable and partially unfavorable decision. AR 15-34. On December 15, 2016, the Appeals Council denied the request for review. AR 1-7. This action followed.

# II.
# STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.

# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (citation and quotation marks omitted).

## B. The ALJ's Findings

The ALJ found that McLearn met the insured status requirements through September 30, 2012. AR 22. Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that McLearn had the severe impairments of degenerative disc disease of the lumbar spine and osteoarthritis of the bilateral knees. AR 22.

The ALJ determined that McLearn became disabled on October 14, 2014. AR 33. Prior to October 14, 2014, McLearn had the residual functional capacity ("RFC") to perform light work except that he could sit, stand and walk for six hours in an eight-hour workday; push or pull 20 pounds occasionally and 10 pounds frequently; frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl; and occasionally climb ladders. AR 26. Prior to October 14, 2014, McLearn was capable of performing past relevant work as a real estate sales agent. AR 32.

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

## C. Residual Functional Capacity

"The onset date of a disability can be critical to an individual's application for disability benefits. A claimant can qualify for SSDI only if her disability begins by her date last insured, and these benefits can be paid for up to 12 months before her application was filed." *Wellington v. Berryhill*, 878 F.3d 867, 872 (9th Cir. 2017). "In contrast, a claimant is eligible for SSI once she becomes disabled, but she cannot receive benefits for any period before her application date." *Id.* "For both programs, the onset date is the date when the claimant is unable to engage in any substantial gainful activity due to physical or mental impairments that can be expected to last for at least 12 months." *Id.* The ALJ is responsible for reviewing the record and resolving any conflicts or ambiguities. *Id.*

"[T]o obtain disability benefits, [a claimant] must demonstrate he was disabled prior to his last insured date." *Morgan v. Sullivan*, 945 F.2d 1079, 1080 (9th Cir. 1991). The claimant "bears the burden of proof and must prove that he was 'either permanently disabled or subject to a condition which became so severe as to disable [him] prior to the date upon which [his] disability insured status expired.'" *Armstrong v. Comm'r*, 160 F.3d 587, 589 (9th Cir. 1998) (citation omitted). "To be eligible for SSDI, a claimant's disability must 'be continuously disabling from the time of onset during insured states to the time of application for benefits.'" *Wellington*, 878 F.3d at 875 (citation omitted).

"Under ordinary circumstances, an ALJ is equipped to determine a claimant's disability onset date without calling on a medical advisor." *Id.* at 874 (finding medical expert not required when relatively complete medical chronology is available). The medical evidence serves that the primary element in the determination of the onset date. *Id.* at 872 (citing Social Security Ruling 83-20).

McLearn contends that the ALJ's finding that he was capable of light work prior to October 14, 2014 is not supported by substantial evidence. Specifically, McLearn argues that the ALJ's characterization of his treatment as routine and conservative prior to October 14, 2014 is erroneous, and that his finding that McLearn was capable of light

work prior to October 14, 2014 is unsupportable in light of the objective medical evidence and treatment.

            1.      <u>July 24, 2012 through September 30, 2012</u>

The first time period considered by the ALJ was July 24, 2012 (the alleged onset date) through September 30, 2012 (the date last insured). AR 28. The ALJ's findings for this period are supported by substantial evidence, including the objective medical evidence and Plaintiff's reported symptoms. AR 29.

On August 6, 2012, Plaintiff appeared well nourished and in no distress. AR 29, 346. Imaging of the lumbosacral spine on August 6, 2012 was interpreted by his physician as moderate degenerative joint disease and spondylosis. AR 348. The imaging indicated the vertebral body heights were preserved without acute fracture deformity; there was multilevel spondylosis most prominent at L5/S1 without significant interval change from the prior imaging; and there was mild retrolisthesis at L2/L3 and L3/L4 likely due to advanced facet arthritis. AR 29, 554; *see also* AR 547. The retrolisthesis was at grade 1 (mild). AR 393. Plaintiff used Vicodin as needed and did stretching exercises. AR 29, 349. He "still does his realty work." AR 349.

As of August 29, 2012, Plaintiff reported moderate back pain that was aggravated by standing, hiking and jogging. At worst, his pain level ranged from 3 to 5 out of 10. AR 365. On the Oswestry Lower Back Pain Disability Index ("ODI"), which is based entirely on a patient's self-reported symptoms,[2] Plaintiff's pain was 21-40, which is the second lowest category and is considered moderate.[3] His functional goals included standing for over one hour with no pain so that he could return to his previous level of

---

[2] *See Roberts v. Colvin*, 2016 U.S. Dist. LEXIS 158079, *20 n.3 (E.D. Wash. Nov. 15, 2016).

[3] The ODI scale is as follows: 0-20 (minimal), 21-40 (moderate), 41-60 (severe), 61-80 (crippling) and 81-100 (bed-bound or exaggerating symptoms). *See MacDonald v. Astrue*, 2007 U.S. Dist. LEXIS 25984, *2 n.4 (D. Mass Apr. 4, 2007).

yardwork. AR 366. Thus, contrary to Plaintiff's arguments, his contemporaneous reports of his symptoms did change after 2012, as described more fully below.

2. August 23, 2013 until October 13, 2014

The second time period considered by the ALJ was August 23, 2013 (the month prior to McLearn's application for SSI benefits) through the date of the decision. AR 29. Because the ALJ awarded benefits as of October 14, 2014, the court considers the period between August 23, 2013 through October 13, 2014.

The ALJ found that, during this period, Plaintiff could perform light work except that he could sit, stand and walk for six hours in an eight-hour workday; push or pull 20 pounds occasionally and 10 pounds frequently; frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl; and occasionally climb ladders. AR 26. The ALJ found that Plaintiff received routine and conservative treatment through October 13, 2014, and the objective medical evidence did not support greater functional limitations that the RFC assessment. AR 29.

The ALJ's findings for this period are not supported by substantial evidence. In March 2013, Plaintiff reported pain in the range of 6-8 out of 10. AR 368. In April 2013, Plaintiff reported pain at 8/10. AR 369. As the ALJ noted, an MRI on April 3, 2013 indicated loss of disc height and disc dessication at L2/L3. There was a 1.5mm broad-based posterior disc/endplate osteophyte indenting the anterior aspect of the thecal sac at L2/L3 and L3/L4. There were hypertrophic changes at the facet joints of L4/L5 and L5/S1. There was a 3mm broad-bsed circumferential posterior disc/endplate osteophyte complex indenting the anterior aspect of the thecal sac and encroaching into both neural foramina. AR 398. Physical therapy did not help. AR 355. In June 2013, straight leg raising and Fabre signs were positive. AR 377.

Dr. Thio recommended a series of three lumbar facet injections. AR 378. Plaintiff had the first injection on July 12, 2013 and reported 50% improvement when he returned for his second injection on August 13, 2013. AR 502. Plaintiff reported 60-

70% improvement from the first two injections when he returned for his third injection on August 27, 2013. AR 503.

The ALJ reasoned that the injections provided relief because Plaintiff did not report further back pain for the remainder of 2013. AR 29. This finding is not supported by substantial evidence. In September 2013, a vertebral compression fracture was noted at T12 and a vertebroplasty was recommended. AR 384. Plaintiff underwent the procedure on October 8, 2013. AR 506. The next day, Plaintiff had a consultative internal medicine evaluation. Plaintiff reported to Dr. Kanner that he was working only four hours per day in the real estate office and was unable to show homes. AR 335-36. Dr. Kanner noted that Plaintiff had no difficulty getting into or out of a chair. AR 336. He was tender to palpation along the thoracic and lumbar spine with no muscle spasm. Straight leg raising was negative, and range of motion was within normal limits. AR 338. Motor strength was 5/5 with good muscle tone bilaterally. AR 339. Dr. Kanner reviewed imaging results and noted 15-20% loss of disc height anteriorly at T11/T12 with vertebroplasty at T12. Dr. Kanner noted spondylosis at T3/T12 with mild disc dessication at T11/T12. With respect to the lumbar spine, Dr. Kanner noted 15% loss of height anteriorly at L1, spondylosis with mild to moderate disc degeneration at L5/S1 and facet joint arthritis at L4/L5 and L5/S1. AR 340. Dr. Kanner opined that Plaintiff was capable of light work and was able to sit, stand and walk up to six hours in an eight-hour workday. *Id.*

The ALJ's finding that Plaintiff was treated with routine and conservative measures also is not supported by substantial evidence. *Garrison v. Colvin*, 759 F.3d 995, 1015 n.20 (9th Cir. 2014) (questioning whether epidural injections are considered conservative treatment); *Pontzious v. Berryhill*, 2017 U.S. Dist. LEXIS 202980, *20-*21 (finding multiple medial branch blocks and epidural injections are not conservative treatment); *Bradley v. Comm'r*, 2016 U.S. Dist. LEXIS 34222, *12-*13 (E.D. Cal. Mar. 16, 2016) (agreeing that multiple medial branch blocks and epidural injections are not conservative treatment).

In January 2014, Plaintiff reported to his treating physician, Dr. Stanford, that the injections relief for a while, but it "tends to flare up." He "occasionally" needed to lie down for four to six hours because his back ached so much. AR 467. Dr. Stanford stated that the spinal stenosis looked "mild on the MRI" but clinically sounded more significant. AR 469. Plaintiff reported being able to take care of activities of daily living such as shopping for groceries, driving, using the phone, preparing meals, bathing, dressing, household chores, walking, and transferring into and out of a chair. His pain ranged from 4-6 out of 10. AR 470. Plaintiff also received knee injections. AR 646-47. Imaging on November 13, 2013 indicated early tricompartment osteoarthritis with moderate involvement of the right patellofemoral joint. AR 460.

In February 2014, imaging of the lumbar spine indicated multilevel moderate to severe disc space flattening at L2 through S1. AR 563. Plaintiff reported to the examining psychologist that he could not sit at a desk for many hours per day because of back pain and worked part time to the extent his back permits. He was able to show property last week and could use a computer, care for his child, watch TV, play guitar and do some housework. AR 475. Plaintiff reported to his treating physician, Dr. Druet, that he had increasing back pain radiating to his buttocks. AR 1051, 1053. The pain was made worse by bending, climbing or descending stairs, driving, lifting, sitting for prolonged periods, standing for prolonged periods and walking. He could walk two blocks with pain and had to rest often during the day due to pain. The pain affected daily activities such as going to work, household chores and exercising. AR 1051. Palpation of the lumbar facets resulted in pain at L3/L5. Facet loading pain was positive bilaterally. AR 1053.

Plaintiff underwent a series of three epidural injections in March 2014. AR 1036, 1043, 1050. In May 2014, Plaintiff reported slight improvement but, even so, he had persistent low back pain when rising from sitting to standing and had bilateral knee pain. AR 1026. His average pain level was 7/10. AR 1027. Facet loading pain was positive bilaterally in the lumbar spine. AR 1028.

On June 24, 2014, Plaintiff underwent L3/L4 medial branch blocks and L5 dorsal ramus blocks bilaterally. AR 604. Plaintiff reported that the blocks helped his pain almost completely for the first 24 hours but then wore off over the course of several days. AR 1000. In July 2014, Plaintiff received a series of three knee injections due to severe pain that caused difficulty with activities of daily living and ambulation. AR 1007, 1012, 1017. Plaintiff reported that the injections did not improve his pain. AR 1000. In August 2014, Plaintiff reported average pain of 8/10. AR 1001.

In September 2014, Loma Linda noted that the MRI dated August 14, 2014 showed central stenosis at L4/L5, which was not mentioned in the radiology report, as a result of facet and ligamentum hypertrophy. Loma Linda diagnosed spinal stenosis, lumbar region, with neurogenic claudication. AR 596. Seventy-five percent of Plaintiff's pain was in the L4 distribution. His pain was made worse by walking one block and standing for 5-10 minutes. Medication, physical therapy and injections had been ineffective. AR 594. The plan was to have Plaintiff undergo L4/L5 bilateral laminectomies, medial facetectomies and foraminotomires. AR 596. On October 15, 2014, Plaintiff underwent those procedures. AR 679.

### D. Relief

The decision whether to remand for further proceedings is within the discretion of the district court. *Treichler v. Comm'r*, 775 F.3d 1090, 1099 (9th Cir. 2014). When there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1101. However, where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.*

It appears evident from the medical record that Plaintiff's disability commenced no later than September 23, 2013, when Dr. Thio assessed a vertebral compression fracture and recommended vertebroplasty. AR 384. The Commissioner argues that

remand is appropriate for the ALJ to re-evaluate Dr. Kanner's consultative opinion on October 9, 2013.  Given that Dr. Kanner's evaluation occurred the day after Plaintiff underwent vertebroplasty, the timing of her evaluation and opinion is consistent with Plaintiff's pattern of experiencing immediate relief in the first 24 hours and afterwards having the relief wear off over several days.  Nevertheless, this matter will be remanded for reconsideration of the onset date during the period August 23, 2013 through October 13, 2014.

## IV.

## **CONCLUSION**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed in part and reversed in part.  The matter is remanded for reconsideration of the onset date during the period August 23, 2013 through October 13, 2014.

DATED: March 21, 2018

*Alicia G. Rosenberg*
ALICIA G. ROSENBERG
United States Magistrate Judge